**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

ROBERT WOLSCHLAGER,

    Plaintiff,                        CASE NO. 05-CV-10252

v.                                    DISTRICT JUDGE THOMAS LUDINGTON
                                      MAGISTRATE JUDGE CHARLES BINDER

SGT. MICHAEL ANDERSON,

    Defendant.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
**ON DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT**
(Dkt. 11)

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant's Motion for Summary Judgment be **GRANTED**.

**II.    REPORT**

    **A.    Introduction**

By order of U.S. District Judge David M. Lawson, this *pro se* civil rights case was referred to the undersigned Magistrate Judge for pretrial proceedings and case management. (Dkt. 4.) The case was reassigned to U.S. District Judge Thomas L. Ludington on September 12, 2006. (Dkt. 14.) Currently before the Court is Defendant's motion to dismiss or for summary judgment that was filed on May 24, 2006. (Dkt. 11.) Plaintiff did not file a response opposing the motion. After reviewing the documents submitted, I conclude that the motion is ready for Report and Recommendation without oral argument pursuant to E.D. Mich. LR 7.1(e)(2).

**B.     Factual Background**

Plaintiff's complaint consists of one paragraph alleging the following:

> Officer Anderson pulled me over.  He searched my vehicle without my permission and without a search warrant.  On private property he impounded my vehicle where I had permission to park.  He also confiscated my money for a drug charge without a warrant to search my wallet.  He took hundreds.

(Compl., Dkt. 1 at 1.)  On the Civil Cover Sheet, Plaintiff checked several boxes indicating the nature of his complaint but did not check the "other civil rights" box.  (*Id*. at 2).  Liberally construing the *pro se* complaint as required, however, the complaint alleges a Fourth Amendment civil rights violations based on an improper search of his vehicle and seizure of cash in his wallet.  *See* FED. R. CIV. P. 8(f) (requiring construction of pleadings "as to do substantial justice"); *see also Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972).

Defendant's motion attaches the relevant police report which provides more detail. Defendant Sergeant Anderson noted:

> Officer had previous knowledge that Wolschlager's driver's license had been revoked.  Officer was on patrol and was about to exit the Huron Central Dispatch driveway, when Officer observed Wolschlager drive past headed east on Soper Road.  Officer followed behind Wolschlager to the corner of Soper Road and S. Pt. Crescent Street.  Wolschlager the turned right (south) on Port Crescent Street without signaling in any way for a turn.  Officer activated the emergency lights on the patrol vehicle and Wolschlager pulled into a private drive on S. Port Crescent Street (now Bad Axe Road) and stopped.
>
> Officer contacted Wolschlager and requested his driver's license and vehicle information.  Wolschlager stated that he didn't have a license and that it was expired.  He was able to provide proof of registration and insurance for the vehicle.  Officer advised Wolschlager for [sic] the reason for the stop and advised him that Officer would be back shortly.  Officer observed that Manuela Garza was the only other occupant in the vehicle.
>
> Although the vehicle is registered to Greg Milton, Wolschlager kept referring to it as "his."  Officer has seen the vehicle parked at Wolschlager's residence at all hours, and it also contained tool boxes with Wolschlager's name on them.  Wolschlager

> also made mention of the fact that he could not get a vehicle registered in his name because of his license status.
>
> A LEIN/SOS check re-confirmed that Wolschlager's license was denied and revoked. Officer Webber and Deputy James Jimkoski arrived to assist.
>
> Officer returned to Wolschlager and advised him that his license was not only expired, but it was revoked and he was under arrest. Officer asked him to step out of the vehicle and opened the driver's door. Wolschlager made furtive gestures by reaching between the seats and under the driver's seat. Officers grabbed Wolschlager's arms and assisted him out of the vehicle with minimal force. Officer handcuffed Wolschlager, double-locked them and searched him. No contraband was found. He was placed in the back seat of Officer's patrol vehicle and seat belted. Due to Wolschlager's unpredictable behavior, Deputy Jimkoski stood by Officer's vehicle.
>
> Officer contacted Garza and asked her to step out of the vehicle. Officer asked her if she would empty her pockets and she did. She also turned pockets inside-out. No contraband was found.
>
> Officer searched the vehicle incident to the arrest and found a pack of Kool cigarettes under the right side of the driver's seat. Inside the cigarette pack was a small baggie containing marijuana and a marijuana cigarette. No other contraband was found.
>
> A small portion of the marijuana was field tested. The result was positive for the presence of marijuana.
>
> Officer seized the baggie marijuana, the marijuana cigarette and cash from Wolschlager. A notice of seizure form was later completed and Wolschlager was served with a copy. The marijuana was tagged as evidence. See attached property sheet.
>
> Since the vehicle was in a private drive, it was towed by Chuck's Auto. Garza had no driver's license and was picked up at the scene by some friends who happened to be driving by.
>
> Wolschlager was transported to the Huron County Jail where he was booked and lodged. Officer issued Wolschlager citation #BA03466 for (A) Driving While License Revoked, (B) Possession of Marijuana and (C) Fail to Signal.
> 05-12-2005 Robert Wolschlager plead guilty to driving while license suspended and was fined $610.00. The charges of possession of marijuana and failing to signal a turn were dismissed.

(Def.'s Mot., Dkt. 11, Ex. A at 1-2.)

3

### C. Governing Motion Standards

Defendants seek dismissal under Rule 12(b) of the Federal Rules of Civil Procedure or, in the alternative, summary judgment under Rule 56. Rule 12(b) provides that when "matters outside the pleading are presented to *and not excluded by the court*, the motion [to dismiss] shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." FED. R. CIV. P. 12(b) (emphasis added). In their treatise, Wright and Miller explain that, pursuant to the portion of the rule italicized above,

> [t]he court has complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion. This discretion generally will be exercised on the basis of a determination of whether or not the proffered material, and the resulting conversion from the Rule 12(b)(6) to the Rule 56 procedure, is likely to facilitate the disposition of the action.

5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1366 (footnote omitted).

Defendant has filed a series of exhibits with his response. These documents are relevant to the arguments and worthy of review and consideration. The Court therefore finds that the matters outside the pleadings presented by the Defendant should be accepted and the motion considered as one under Rule 56, as the acceptance and review of these documents will materially facilitate the disposition of the instant motion. Further, Plaintiff has had ample time to respond to the submission of these documents and has not done so, thereby eliminating any concern of prejudice. I will therefore consider Defendants' motion under the standards for the determination of a Rule 56 motion for summary judgment.

A motion for summary judgment will be granted under Rule 56(c) where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter

4

of law." FED. R. CIV. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

**D.      Analysis and Conclusions**

**1.      *Pro Se* Status**

I note at the threshold that Plaintiff brings this action *pro se.* A *pro se* litigant's pleadings are construed liberally and judged against a less stringent standard than pleadings drawn by attorneys. *Haines, supra.* Nevertheless, "a *pro se* litigant, whether a plaintiff or defendant, is required to follow the law." *Williams v. Sears, Roebuck and Co.*, 143 F. Supp. 2d 941, 947 (W.D. Tenn. 2001). As the U.S. Supreme Court stated in *McNeil v. United States*, 508 U.S. 106, 113 S. Ct. 1980, 124 L. Ed. 2d 21 (1993), "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *Id*. at 113.

*Pro se* plaintiffs "are not automatically entitled to take every case to trial." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). In addition, it "is not the proper function of the district court to assume the role of advocate for the *pro se* litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The court is not to "construct arguments or theories for the plaintiff in the absence of any discussion of those issues." *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (citation omitted). "The district court is not required to make [a *pro se* litigant's] argument for him [because] [s]uch a mandate would 'require the courts to explore

6

exhaustively all potential claims of a *pro se* plaintiff . . . [and] would . . . transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Crawford v. Crestar Foods*, No. 98-3144, 2000 WL 377349 (6th Cir. April 6, 2000) (unpublished) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)). "Hanging the legal hat on the correct peg is such a [basic pleading] standard, and '[l]iberal construction does not require a court to conjure allegations on a litigant's behalf.'" *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (dismissing a § 1983 suit brought as a § 2241 petition) (quoting *Erwin v. Edwards*, 22 Fed. Appx. 579, 580 (6th Cir. 2001) (dismissing a § 1983 suit brought as a § 2254 petition)). "'[T]he party who brings a suit is the master to decide what law he will rely upon.'" *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, n.7, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987) (quoting *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S. Ct. 410, 57 L. Ed. 716 (1913)). Thus, the "trial and appellate courts should not have to guess at the nature of the claim asserted." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1990).

By construing Plaintiff's complaint as alleging that Defendant violated Plaintiff's Fourth Amendment rights under 42 U.S.C. § 1983, the Court arguably approaches abandoning the proper role of an advisor and nearly approaching the improper role of an advocate. Nevertheless, in light of the lack of response from Plaintiff to Defendant's dispositive motion, I will address the substance of the complaint based on the liberal construction afforded *pro se* pleadings and pursuant to the Court's duty to construe pleadings so "as to do substantial justice." FED. R. CIV. P. 8(f); *Haines, supra; Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (liberally construing Plaintiff's complaint to "uncover[] another claim").

7

### 2.     **Qualified Immunity**

Defendant argues that he is entitled to qualified immunity because "he reasonably thought his actions were consistent with existing law." (Def.'s Mot., Dkt. 11 at 2.) The U.S. Supreme Court has explained that, pursuant to the defense of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). The rationale underlying the doctrine is that "an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Id.* Qualified immunity further recognizes that "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation he confronts. 'If the officer's mistake as to what the law requires is reasonable, . . . the officer is entitled to the immunity defense.'" *Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)).

The defense of qualified immunity "can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment, or as an affirmative defense at trial." *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) (citing *Kennedy v. City of Cleveland*, 797 F.2d 297, 299-300 (6th Cir. 1986)). When raised after discovery, "the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).

To determine whether an official is entitled to qualified immunity, the Sixth Circuit has instructed that courts are to:

> employ the sequential analysis prescribed by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). First (the court) must determine whether, taken in the light most favorable to the party asserting the injury, the facts alleged are sufficient to make out a violation of the Constitution. *Saucier*, 533 U.S. at 201, 121 S. Ct. 2151. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." If, however, "a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id*.

*Greene*, 310 F.3d at 894.

The clearly established right must be particularized such that a "reasonable official in the defendant's position knows that her actions violate that right." *Bradley v. City of Ferndale*, 148 Fed. Appx. 499, 505 (6th Cir. 2005). In addition, in the context of a dispositive motion, the next determination is "whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc).[1] The court views the facts in the light most favorable to the plaintiff but must only consider the facts known to the officers at the time the conduct was undertaken. *Hale v. Kart*, 396 F.3d 721, 725, 728 (6th Cir. 2005). The court may dismiss the complaint "only if it is clear that no violation of a clearly established constitutional right could be found under any set of facts that could be proven consistent with the allegations or pleadings." *Jackson v. Schultz*, 429 F.3d

---

[1] Other circuits, such as the First Circuit, employ a similar three-step test: "'(I) whether the plaintiff's allegations, if true, establish a constitutional violation; (ii) whether the constitutional right at issue was clearly established at the time of the putative violation; and (iii) whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right.'" *Burke v. Town of Walpole*, 405 F.3d 66, 77 (1st Cir. 2005) (quoting *Limone v. Condon*, 372 F.3d 39, 44 (1st Cir. 2004)).

586, 589 (6th Cir. 2005). Therefore, the qualified immunity determination begins by identifying the substantive right that has been allegedly violated. *Id.*

### a.      Whether a Constitutional Violation Has Occurred

Defendant contends that Plaintiff has not alleged a constitutional violation because Defendant: (1) had reasonable suspicion to stop Plaintiff's vehicle because Plaintiff failed to signal before making a turn and was known to have a revoked driver's license; (2) had probable cause to arrest Plaintiff based upon the information learned pursuant to a Law Enforcement Information Network ("LEIN") search and information from the Secretary of State's office that Plaintiff's driver's license had been revoked; and (3) properly searched Plaintiff's vehicle, package of cigarettes, and seized the marijuana found in the cigarette pack and cash found in Plaintiff's possession as part of a proper search incident to an arrest. (Def.'s Mot., Dkt. 11 at 1.)

### I.      Fourth Amendment - Probable Cause to Arrest Plaintiff

The Fourth Amendment of the U.S. Constitution requires that an arrest be supported by probable cause. U.S. CONST. Amend IV; *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001). The Supreme Court has held that an officer is permitted to make a warrantless arrest, even for a misdemeanor, so long as he has probable cause to believe that an offense has been committed. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S. Ct. 1536, 149 L. Ed. 2d 549 (2001). "[P]robable cause means something 'less than evidence that would justify . . . conviction,' but 'more than bare suspicion.'" *Greene v. Reeves*, 80 F.3d 1101, 1105 (6th Cir. 1996) (quoting *Brinegar v. United States*, 338 U.S. 160, 175, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949)). Probable cause exists if there are "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v.*

*DeFillippo*, 443 U.S. 31, 37, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979). When a court is called upon to make a determination as to whether an arrest was supported by probable cause, the arresting officer's subjective knowledge of the facts are the only facts to be considered, even if it is now known that some of the officer's beliefs were in fact mistaken. *Klein*, 275 F.3d at 549-50. The "existence of probable cause in a section 1983 action presents a jury question, unless there is only one reasonable determination possible." *Id.* at 550.

In the instant case, Defendant proffers two reasons for stopping Plaintiff's vehicle: (1) a traffic violation, *i.e.*, failure to signal when turning; and (2) his personal knowledge that Plaintiff's license was revoked. (Police Report, Dkt. 11, Ex. A at 1.)

"[A] roadside detention is lawful so long as the officer has probable cause to believe that the motorist has violated the traffic laws." *United States v. Garrido*, 467 F.3d 971, 977 -78 (6th Cir. 2006) (citing *United States v. Burton,* 334 F.3d 514, 516 (6th Cir. 2003) ("The Fourth Amendment . . . permits an officer who has probable cause to believe that a traffic violation is occurring to detain the automobile")). *See also United States v. Johnson,* 242 F.3d 707, 709-10 (6th Cir. 2001) (finding broken tail light justified stop); *United States v. Akram,* 165 F.3d 452, 455 (6th Cir. 1999) (finding failure to use turn signal for lane change justified stop); *United States v. McCully,* 21 F.3d 712 (6th Cir. 1994) (finding minor speeding violation justified stop).[2]

"A police officer may effect a traffic stop of any motorist for any traffic infraction, even if the officer's true motive is to detect more extensive criminal conduct." *United States v. Townsend,* 305 F.3d 537, 541 (6th Cir. 2002). If the traffic stop is justified, the officer's "actual motivation

---

[2]Reasonable suspicion may also suffice to justify a traffic stop. *United States v. Perez,* 440 F.3d 363, 370 (6th Cir. 2006) ("[a]n ordinary traffic stop is like an investigative detention, the scope of which is governed by *Terry* principles."); *Weaver v. Shadoan,* 340 F.3d 398 (6th Cir. 2003) (upholding a civil traffic stop based on reasonable suspicion of a violation of vehicle registration and window tinting laws).

11

is immaterial." *United States v. Perez,* 440 F.3d 363, 370 (6th Cir. 2006). *See also United States v. Davis*, 430 F.3d 345, 352 (6th Cir. 2005) (finding that traffic stop was proper where defendant was speeding even though investigators were following defendant's vehicle at the time); *Whren v. United States,* 517 U.S. 806, 812-13, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996). In other words, pretextual stops are valid, so long as the motorist actually committed a traffic violation. *United States v. Ferguson,* 8 F.3d 385, 391 (6th Cir. 1993) (*en banc*).

In the instant case, Plaintiff does not appear to contest the officer's initial stop. Even if he had, Defendant has submitted evidence indicating that he had probable cause to believe Plaintiff had violated the traffic law because he witnessed Plaintiff's failure to signal before turning and Plaintiff has failed to respond to Defendant's motion with evidence to the contrary. (*See* Police Report, Dkt. 11, Ex. A at 1.) Defendant's knowledge of Plaintiff's status as an unlicensed driver could also support probable cause and any other potential motivations are immaterial. *Ferguson, supra*. Therefore, I suggest that there is no disputed issue of fact as to whether the initial traffic stop was proper.

As part of the stop, Defendant was authorized to check Plaintiff's driving status and potential criminal status on the LEIN. The Sixth Circuit has explicitly "ruled that an officer can lawfully detain the driver of a vehicle until after the officer has finished making record radio checks and issuing a citation, because this activity 'would be well within the bounds of the initial stop.'" *United States v. Wellman*, 185 F.3d 651, 656 (6th Cir. 1999). *See also United States v. Ellison*, 462 F.3d 557, 562 (6th Cir. 2006) (holding that no probable cause is required to run a license plate number through the LEIN because there is no reasonable expectation of privacy in a license plate number). Furthermore, once Defendant confirmed that Plaintiff's driver's license was revoked, Defendant could properly arrest Plaintiff for driving without a valid license. MICH.

COMP. LAWS § 257.904 (misdemeanor offense of driving while license suspended); MICH. COMP. LAWS § 764.15(a) (allowing warrantless arrests for felonies and misdemeanors committed within the officer's presence).

### ii. Fourth Amendment - Search of Vehicle and Seizure of Marijuana and Cash

The Supreme Court has held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of the automobile." *New York v. Belton*, 453 U.S. 454, 460, 101 S. Ct. 2860, 69 L. Ed 2d 768 (1981). The passenger compartment includes "all spaces reachable without exiting the vehicle, excluding areas that would require dismantling the vehicle." *United States v. Pino*, 855 F.2d 357, 364 (6th Cir. 1988) (quotations omitted). "[E]ven if [an] item is no longer accessible to the defendant at the time of the search," it may be seized "[s]o long as the defendant had the item within his immediate control near the time of his arrest." *Northrop v. Trippett*, 265 F.2d 372, 379 (6th Cir. 2001) (internal citations omitted).

"[P]olice may also examine the contents of any containers found within the passenger compartment . . . [and s]uch a container may, of course, be searched whether it is open or closed." *Belton,* 453 U.S. at 460-61. Even containers that "could hold neither a weapon nor evidence of the criminal conduct for which the suspect was arrested" may be searched pursuant to a search incident to arrest. *Id.* at 461 (citing *United States v. Robinson*, 414 U.S. 218, 235, 94 S. Ct. 467, 38 L. Ed 2d 427 (1973) (searching and seizing evidence found in "crumpled up cigarette package" that was in passenger compartment)).

In the instant case, Defendant asserts that after arresting Plaintiff he searched the Plaintiff's vehicle, discovered a package of cigarettes, and found marijuana within the package of cigarettes. (Police Report, Dkt. 11, Ex. A at 2.) Plaintiff has not responded to this assertion, despite the fact

that he maintains the burden of showing that Defendant is not entitled to qualified immunity. *See Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006) ("Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity."). I therefore suggest that there is no disputed material issue of fact as to whether the search and seizure of the marijuana fit squarely within the purview of the search incident to arrest exception to the warrant requirement as iterated in *Belton, supra*, and *Robinson, supra*.

Defendant's uncontroverted assertion regarding the seizure of cash found after discovery of the marijuana indicates that it was proper under Michigan law,[3] and that law is presumed to be constitutional unless proven otherwise. *Cleveland Nat'l Air Show, Inc. v. U.S. Dep't of Trans.*, 430 F.3d 757, 765 (6th Cir. 2005) (legislation "comes to us bearing a strong presumption of validity").

Finally, I suggest that the uncontested fact that neither Plaintiff nor the passenger had valid driver's licenses supports Defendant's decision to have Plaintiff's car towed and, absent legal authority to the contrary, was not unreasonable or unconstitutional.

### b.    Whether the Constitutional Right was Clearly Established

"When making a qualified immunity analysis, it is important to remember that a defendant is, in essence, saying: 'If the plaintiff's version is credited, what I did, judged *today, arguendo*, would be wrongful, but at the time I acted, no reasonable officer would have known he was acting wrongfully.'" *Kain v. Nesbitt*, 156 F.3d 669, 671 (6th Cir. 1998) (citation omitted). The probable cause standard has long been clearly established, *see Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999), and there has been no change or ambiguity in the law that would render today's

---

[3]*See* MICH. COMP. LAWS § 333.7521(1)(f) (allowing forfeiture of anything of value furnished or intended to be furnished in exchange for a controlled substance); MICH. COMP. LAWS § 333.7522 (allowing property to be forfeited without process as part of a search incident to arrest).

14

perspective any different. I therefore suggest that the actions of Defendant were not wrongful under the law as it existed at the time of Plaintiff's arrest or as it stands now.

### 3. Conclusion

The Court must permit a case such as this to go to a jury if, "first, there are genuine issues of material fact as to whether Defendants violated [Plaintiff's] Fourth Amendment rights in an objectively unreasonable way and, second, those rights were clearly established at the time of [Plaintiff's] arrest such that a reasonable officer would have known that his conduct violated them." *St. John v. Hickey*, 411 F.3d 762, 768 (6th Cir. 2005).

In this case, where there are no disputed issues of material fact and the evidence is one-sided that Defendant's conduct did not cause a deprivation of Plaintiff's rights, *see Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986), I suggest that Defendant's motion for summary judgment be granted.

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*,

829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

                                        s/ *Charles E. Binder*
                                        CHARLES E. BINDER
Dated: January 22, 2007             United States Magistrate Judge

## CERTIFICATION

I hereby certify that this Report And Recommendation was electronically filed this date, electronically served on Audrey Forbush and District Judge Lawson, and served on Robert Wolschlager by first class mail.

Date:  January 22, 2007           By     s/Jean L. Broucek
                                                 Case Manager to Magistrate Judge Binder